SULTON LAW OFFICES
Anne T. Sulton, *Pro Hac Vice Pending*
Wisconsin SBN 1010730
Post Office Box 371335
Milwaukee, WI 53237
Tel: (360) 870-6000
Email: annesulton@gmail.com

HOLMAN LAW OFFICE
Kristina S. Holman, *Designated Resident Counsel*
Nevada SBN 3742
8275 S. Eastern Ave., Suite 215
Las Vegas, NV 89123
Tel: (702) 614-4777
Fax: (702) 487-3128
Email: *kholman@kristinaholman.com*
*Attorney for Plaintiff,*
   *Jeremia Gillo*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JEREMIA GILLO,<br><br>            Plaintiff,<br><br>vs.<br><br>THE HONORABLE PETE BUTTIGIEG,<br>Secretary of Transportation<br>1200 New Jersey Ave., S.E.<br>Washington, DC 20590,<br><br>            Defendants. | CASE NO.: 2:22-cv-00857-CDS-NJK<br><br>**COMPLAINT**<br>**(Jury Demanded)** |

Plaintiff, JEREMIA GILLO, brings this action against Defendant Pete Buttigieg, Secretary of the United States Department of Transportation. Mr. Gillo seeks relief for unlawful employment discrimination based upon his race (Asian) in violation of 42 U.S.C. 2000e, *et seq.* ("Title VII").

. . .

. . .

-1-

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the claims in this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction), as these claims for monetary damages and other relief arise under the laws of the United States, including Title VII.

2. This Court is the proper venue for this action because Mr. Gillo's claims arise in Las Vegas, Nevada, which is within this Court's geographical boundaries.

3. Mr. Gillo has exhausted his administrative remedies on all claims pled hereunder prior to timely filing this action with this Court.

## THE PARTIES

4. Plaintiff Jeremia Gillo is Asian (Filipino) and a resident of Las Vegas, Nevada. Mr. Gillo is an experienced supervisory level employee of the Department of Transportation, Federal Aviation Administration ("FAA").

5. Defendant Pete Buttigieg currently is the Secretary of the United States Department of Transportation ("DOT") and is sued in his official capacity. As DOT Secretary, he is responsible for employment policies, practices, and procedures of all Agencies within the DOT. The FAA is an Agency within the DOT.

## ALLEGATIONS OF FACTS

6. In 2005, Mr. Gillo begins his employment with the FAA. He holds a four-year college degree and a commercial pilot's license. Many employees join the FAA with only a high school diploma and no aviation experience.

7. Mr. Gillo's first FAA post is in Los Angeles, working as an air traffic controller. For a couple years, he works for the FAA in Chicago.

. . .

8. By 2013, Mr. Gillo returns to Los Angeles to work as an operations supervisor.

9. Throughout his employment with the FAA, Mr. Gillo consistently receives job performance evaluations concluding that he meets or exceeds the FAA's expectations. He has no discipline – his work record is unblemished. Mr. Gillo enjoys a good reputation.

10. In or about March 2018, an exciting opportunity to work as a mid-level supervisor for the FAA in Las Vegas is presented. The job duties include supervising air traffic controllers at the world's reportedly 10th busiest airport and moving safely thousands of commercial aircraft carrying millions of passengers each year.  Mr. Gillo accepts the job offer.

11. This new position starts before Mr. Gillo can physically move his family's home from Los Angeles to Las Vegas. So, for a couple of years, Mr. Gillo commutes from Los Angeles to Las Vegas. Many supervisory level FAA employees commute long distances to work, traveling weekly between or among cities located in other States.

12. Mr. Gillo has an FAA credit card. His supervisor in Los Angeles authorizes him to use the card for travel related expenses as he transitions from Los Angeles to Las Vegas, and instructs Mr. Gillo to timely pay the bill every month using his personal funds. Mr. Gillo does so, purchasing food, gas and other travel related items.

13. After Mr. Gillo moves his home to Las Vegas, he continues to use the FAA credit card for the same types of purchases, e.g., food – he purchases food for his co-workers when working long hours without a full meal break due to the heavy air traffic demand.

14. Mr. Gillo does not realize this use of the FAA credit card is a technical infraction of the FAA's credit card use rules. He mistakenly believes his authorization to use the credit card in this manner continues because he receives one email reminding him to pay the then due balance using his personal funds.  He promptly pays the bill.

15. Mr. Gillo is doing such a great job that his immediate and first line supervisor William Wadley, who has more than 25 years' experience working at the FAA's Las Vegas facility, says under oath sworn: "operationally he – he's an outstanding performer."

16. In June 2020, David Leslie enters the scene as the new Air Traffic Manager at the FAA's Las Vegas facility. Mr. Leslie becomes the top decision maker in this facility, Mr. Wadley's direct supervisor, and Mr. Gillo's second line supervisor.

17. In or about June 2020, Mr. Leslie learns Mr. Gillo is using the FAA credit card for these food and similar purchases and that Mr. Gillo is timely paying the bill for all charges made using his personal funds.

18. Mr. Wadley says that as Mr. Gillo's first line supervisor he is authorized and is supposed to review Mr. Gillo's credit card use and impose discipline if Mr. Wadley deems it appropriate given the circumstances.

19. Mr. Wadley says he communicates with Mr. Leslie about Mr. Gillo's credit card use, informing Mr. Leslie that Mr. Wadley would not impose a 30-day suspension without pay for a penalty for this type of conduct.

20. Mr. Wadley says he is removed from the investigation and penalty imposition disciplinary process as it relates to Mr. Gillo's credit card use.

21. On or about November 16, 2020, Mr. Leslie informs Mr. Gillo he is suspended for 30-days without pay, and to be served during the extra busy year-end holiday season from November 17 to December 17, 2020.

22. Mr. Leslie does not explain why he departs from the FAA's disciplinary process or published progressive discipline "table of penalties."

. . .

23. Mr. Leslie does not explain why he chooses the busy year-end holiday season to begin the suspension. However, Mr. Leslie does know that Mr. Gillo was looking forward to working this season because he would make extra money working additional hours.

24. In addition to losing substantial amounts of wages and benefits, the 30-day suspension causes Mr. Gillo embarrassment, humiliation, anger, discouragement, and emotional distress.

25. No other employee in the Las Vegas facility has his or her credit card use investigated.

26. No other employee in the Las Vegas facility with a previously unblemished work record receives a 30-day suspension without pay.

27. No other supervisory level employee in the Las Vegas facility is Asian (Filipino).

28. On information and belief, no other employee assigned to work for the FAA west of the great Mississippi River is given 30-days suspension without pay for credit card use issues, including those engaging in far more egregious conduct, e.g., using the FAA credit card for extravagant purchases.

29. On information and belief, non-Asian employees working in the Las Vegas facility having engaged in more egregious work rule violations, e.g., timecard fraud, receive lower penalties.

## CAUSE OF ACTION

### *Race Discrimination in Violation of Title VII*

30. All previous paragraphs are repeated here and incorporated herein by reference.

31. Title VII prohibits employers from taking adverse actions against an employee because of the employee's race.

32. A 30-day suspension without pay is an adverse action.

33. David Leslie, the Las Vegas Air Traffic Manager, is the FAA's managerial employee taking the actions about which Mr. Gillo's complains. Mr. Leslie is white.

34. Mr. Gillo is Asian. He is a member of a protected class under Title VII.

35. Because of his race, Mr. Leslie targeted Mr. Gillo for mistreatment because Mr. Gillo is Asian. He treated Mr. Gillo more harshly than his non-Asian similarly-situated co-workers.

36. When Mr. Leslie treated Mr. Gillo less favorably, in the terms and conditions of his employment, than his non-Asian similarly-situated co-workers, because of Mr. Gillo's race, Defendant violated Title VII.

37. Defendant's actions were intentional, deliberate, willful, wanton, malicious, reckless, and/or in callous disregard of Mr. Gillo's rights because of his race (Asian).

38. As a direct and proximate cause of Defendant's conduct, Mr. Gillo was harmed and continues to suffer from harm, including but not limited to loss of reputation, embarrassment, humiliation, emotional distress, and monetary damages, including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, and costs – and is entitled to all available legal and equitable remedies. He seeks the relief set forth below.

39. Mr. Gillo is informed and believes, and based thereon, alleges that, in addition to the illegal conduct described above, Defendant may have engaged in other discriminatory practices against Mr. Gillo that are not yet fully known.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jeremia Gillo respectfully requests this honorable Court enter judgment in his favor and against Defendant, and accord him the following relief:

A. Declaration that Defendant's actions against him violate Title VII.

. . .

B.  Order record correction, including but not limited to expungement of any documents in all Agency personnel files reflecting him being investigated and suspended.

C.  An order precluding Defendant from relying upon, considering, or disseminating the Report of Investigation generated in Defendant's pretextual investigation of Mr. Gillo or its contents for any purpose.

D.  Payment of back pay, front pay, and all the fringe benefits to which he is entitled, plus pre- and post-judgment interest to the extent provided by law.

E.  Compensatory damages for his non-economic injuries, including but not limited to harm to his reputation and emotional distress, in an amount deemed just and authorized by law.

F.  An award of the attorneys' fees and costs incurred in the prosecution of this action and in the administrative EEO complaints processes that preceded it.

G.  Such other legal and equitable relief deemed just and proper under the circumstances.

## JURY DEMAND

Mr. Gillo hereby respectfully requests a trial by jury on all the issues in this action that are triable to a jury.

Respectfully submitted this 30th day of May, 2022.

SULTON LAW OFFICES

*/s/ Anne T. Sulton*
Anne T. Sulton, Ph.D., J.D.,
Post Office Box 371335
Milwaukee, WI 53237
Email: annesulton@gmail.com
Tel: (360) 870-6000
*Attorney for Plaintiff, Jeremia Gillo*
*pro hac vice pending*

HOLMAN LAW OFFICE

*/s/ Kristina S. Holman*
Kristina S. Holman
8275 S. Eastern Ave., Ste. 215
Las Vegas, NV 89123
Email: kholman@kristinaholman.com
Tel: (702) 614-4777
*Attorney for Plaintiff, Jeremia Gillo*
*designated resident counsel*