UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Jeremia Gillo, | Case No. 2:22-cv-00857-CDS-NJK |
|         Plaintiff | **Order Granting Defendant's Motion for Summary Judgment and Closing Case** |
| v. | |
| Pete Buttigieg *Secretary of Transportation*, | [ECF No. 42] |
|         Defendant | |

Plaintiff Jeremia Gillo brings this suit alleging racial discrimination and retaliation in violation of 42 U.S.C. § 2000e, et. seq (Title VII) against defendant Pete Buttigieg, the Secretary of the United States Department of Transportation ("DOT"), in his official capacity. DOT moves for summary judgment on both claims. For the reasons herein, I grant summary judgment in favor of DOT on all claims. Because I grant summary judgment on all claims, I kindly instruct the Clerk of Court to close this case.

I.     **Background**[1]

    A.  **Racial discrimination claim**

Plaintiff Jeremia Gillo is Asian (Filipino) and a resident of Las Vegas Nevada. Am. Compl., ECF No. 20 at 2. Since 2005, Gillo has been employed by the Department of Transportation's Federal Aviation Administration ("FAA"). *Id.* During the period between 2013 and 2016, Gillo worked for the FAA in Los Angeles. *Id.* at 3. In his amended complaint, Gillo

---

[1] As this is a motion for summary judgment by DOT, the court looks at the facts in the light most favorable to Gillo. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). Any citation or summary of the allegations set forth in the complaint do not serve as a finding of fact unless stated as such.

explained that in 2018,[2] he received and accepted an offer to begin working for the FAA in Las Vegas. *Id.* The new position in Las Vegas began before Gillo could move his family from Los Angeles to Las Vegas. *Id.* Thus, Gillo commuted from Los Angeles to Las Vegas for a few years before permanently moving to Las Vegas in 2018. *Id.*

  Gillo states that he, like many FAA employees, was given an FAA credit card that could be used by FAA employees on official travel for travel-related expenses. *Id.* During the years that Gillo was commuting between Los Angeles and Las Vegas, and after he officially moved to Las Vegas, Gillo admits that he used the FAA credit card for personal use. *Id.* In June of 2020, while Gillo was working as a Supervisory Air Traffic Control Specialist at Las Vegas Terminal Radar Approach and Control ("TRACON") facility, Gillo's supervisor, David Leslie, became aware of Gillo's improper credit card use. *Id.* at 4. The FAA follows the Department of Transportation Travel Card Management Policy, which states that "travel cardholders may not use travel cards for any transactions, personal or otherwise, unrelated to official travel" DOT's Mot. for Summ. J., ECF No. 42 at 5. Similarly, the FAA's Human Resource Policy Manual prohibits FAA employees from "using Government contractor-issued travel cards for personal use." *Id.*

  After Leslie became aware of Gillo's FAA credit card use, he states that the FAA's Office of Security and Hazardous Materials Safety investigated and discovered that Gillo had approximately 284 travel card transactions for personal expenses for the time period of December 2018 to June 2020. ECF No. 42 at 6. Leslie further states that he reviewed the investigation report and in September 2020, issued a notice proposal to suspend Gillo from work without pay for thirty days for the travel card misuse. *Id.* at 7. In response to the proposal, Gillo did not deny using the government credit card. *Id.* (citing Def.'s Ex. A-5, ECF No. 42-7 at 2.

---

[2] Gillo's amended complaint asserts that "[i]n or about March 2018, an exciting opportunity to work . . . for the FAA in Las Vegas is presented." ECF No. 20 at ¶ 10. However, Gillo's response to the motion for summary judgment contends that "[i]n 2016, Mr. Gillo's Los Angeles supervisors understand the commuting challenges. . ." ECF No. 43 at ¶ 13. Based on the moving papers, the court understands that Gillo began working in Las Vegas in or around 2018, so it construes the reference to 2016 at ECF No. 43 at ¶ 13 to be a scrivener's error.

Gillo's appeal to the proposed thirty-day suspension where he states, "I do not deny that I used the USBank government credit card."). In November 2020, Leslie suspended Gillo for thirty days due to the misuse of the travel card. ECF No. 42 at 8; Def.'s Ex. A-6, ECF No. 42-8. Gillo alleges that he was given this thirty-day suspension because of his race. ECF No. 20 at ¶ 34.

### B. Retaliation claim

In response to the thirty-day suspension, Gillo filed an EEO complaint. ECF No. 20 at 7. While Gillo's formal employment discrimination complaint was pending, Gillo applied to three different FAA jobs under vacancy announcements: AWP-ATO-21-14ACTD-70384 (support specialist), AWP-ATO21-14ACTD71935 (supervisory traffic management coordinator), and AWP-ATO21-14ACTD-72302 (support manager). *Id.*; ECF No. 42 at 9. Gillo was not selected for any of the three positions. ECF No. 20 at 7; ECF No. 42 at 9. According to its motion, the FAA hired Jeremy Bucholz for the support specialist position, Willie Hollie for the supervisory traffic management coordinator, and Brian Arnett for the support manager position. ECF No. 42 at 9, 16–17. Gillo alleges that he is better qualified than the applicants who received the jobs, and that he was denied these jobs by Leslie in retaliation for his EEO complaint in violation of Title VII. ECF No. 20 at 8.

### C. Procedural history

Gillo filed suit on May 30, 2022. Compl., ECF No. 1. On November 23, 2022, DOT filed its answer. DOT's Answer, ECF No. 17. On November 30, 2022, Gillo filed an unopposed motion to amend his complaint, the Magistrate Judge granted said motion, and Gillo filed his amended complaint. Mot. to Amend, ECF No. 18; Order Granting Mot. to Amend, ECF No. 19; ECF No. 20. DOT filed its answer on December 14, 2022. ECF No. 21. On November 20, 2023, DOT filed a motion for summary judgment. ECF No. 42. Gillo filed his response on December 11, 2023. Gillo's Resp., ECF No. 43. Subsequently, on December 26, 2023, DOT replied to Gillo's response. DOT's Reply, ECF No. 47. I set oral argument on the summary judgment motion on July 30, 2024, and it was held on September 11, 2024. ECF No. 48; ECF No. 49.

II.     Legal standard

        A.  Motion for summary judgment under Rule 56

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary-judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

        B.  Title VII burden shifting framework

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against someone because of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e. Title VII's purpose is to "assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens" *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973). "Congress did not intend by Title VII, however, to guarantee a job to every person regardless of qualifications . . . [w]hat is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to

discriminate on the basis of racial or other impermissible classification." *Griggs v. Duke Power Co.*, 401 U.S. 424, 430–31 (1971).

To prevail in a Title VII case, a plaintiff must first establish a prima facie case of discrimination. *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 640 (9th Cir. 2004). Plaintiffs can do so by either (1) presenting direct or circumstantial evidence of discriminatory intent, or (2) using the framework set forth in *McDonnell Douglas Corp. Id.* Gillo conceded in his complaint and during oral argument that he has not presented any direct evidence demonstrating that Leslie exhibited any racial animus toward him nor toward Asians in general. ECF No. 20 at 6. To that end, Gillo presents his claim for racial discrimination in violation of Title VII based solely on circumstantial evidence, for which courts use the *McDonnell Douglas* burden-shifting framework. *Anoruo v. Shinseki*, 2014 WL 664643, at *3 (D. Nev. Feb. 18, 2014).

Under the *McDonnell Douglas* test, a plaintiff carries the initial burden to demonstrate a prima facie case of employment discrimination or retaliation. *Id.* To establish a prima facie case (STEP 1) of employment discrimination a plaintiff must demonstrate:(1) he is a member of a protected class, (2) he was performing his job in a satisfactory manner, (3) he suffered an adverse employment action, and (4) similarly situated individuals outside his protected class were treated more favorably. *Id.* To establish a prima facie case (STEP 1) of retaliation, a plaintiff must demonstrate: (1) they engaged in protected activity, (2) they were thereafter subjected to an adverse employment action, and (3) that there is a causal link between these two events. *Vasquez,* 349 F.3d at 646.

If the plaintiff successfully establishes this prima facie case, the burden shifts (STEP 2) to the employer to articulate some legitimate, non-discriminatory reason for the challenged actions. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010). If the defendant meets this burden, the plaintiff then must raise a triable issue of material fact that the defendant's purported legitimate non-discriminatory action is merely pretext for unlawful discrimination or retaliation (STEP 3). *Id.* A plaintiff can prove pretext by (1) showing that the employer's offered

explanation is inconsistent or not believable or (2) showing that unlawful discrimination or retaliation was more likely what motivated the employer than the employer's proffered reason. *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1171 (9th Cir. 2007).

III.     **Discussion**

As a threshold matter, I note that Gillo failed to cite to any points and authorities in his opposition to defendant's summary judgment motion. *See* ECF No. 43. While this a summary judgment motion so failure to do so does not constitute consent to granting of the motion,[3] the court notes that inclusion of points and authorities certainly aids the court in resolving issues contained therein. The court further notes that plaintiff cited to case law for the first time at oral argument on this motion. While the court permitted counsel to make arguments, counsel is cautioned that "the Court need not consider an issue . . . raised for the first time at oral argument." *Ramirez v. Salvation Army*, 2006 WL 1867722, at *9 (N.D. Cal. July 6, 2006).[4]

I turn to the substance of the motion, and first address the racial discrimination claim. I find that Gillo cannot meet his initial burden under the Title VII burden-shifting framework for his race discrimination claim. Further, even if Gillo could demonstrate a prima facia case of racial discrimination, he has not provided substantial evidence demonstrating pretext. As such, DOT is granted summary judgment on this claim.

   A.   **Gillo cannot establish a prima facie case of employment discrimination.**

To establish a prima facie case of employment discrimination a plaintiff must demonstrate:(1) he is a member of a protected class, (2) he was performing his job in a satisfactory manner, (3) he suffered an adverse employment action, and (4) similarly situated individuals outside his protected class were treated more favorably. *McDonnell Douglas*, 411 U.S. at 802. Although Gillo has established elements (1)–(3) of a prima facie case of racial discrimination, he fails to establish element (4)—that similarly situated individuals outside his

---

[3] *See* Local Rule 7-2(d).

[4] Here, the case law cited by plaintiff's counsel during the hearing did not impact the outcome of this motion.

protected class were treated more favorably. Under the *McDonnell Douglas* framework, individuals are considered similarly situated when they perform a similar job and display similar conduct. *Vasquez*, 349 F.3d at 641. The record shows that Gillo identified three non-Asian employees who had engaged in more egregious work rule violations and received less severe sanctions. Def.'s Ex. B, ECF No. 42-9 at 3. But none of those individuals engaged in conduct involving improper or unauthorized travel card usage. *See id.* (identifying Hollie for engaging in falsification of time and attendance, Vincent Giannola for failure to carry out orders, and Chris Williams for being disrespectful to a pilot). Gillo has not demonstrated that those he identified engaged in conduct of comparable seriousness to Gillo's months, and over 200 instances, of unauthorized credit card usage. *Vasquez*, 349 F.3d at 641. Further, Leslie did not work at TRACON when those identified were disciplined and was not in charge of investigating their conduct or deciding their disciplinary measures. Leslie Decl., Def.'s Ex. A, ECF No. 42-2 at 7. Employees who received disparate discipline are not similarly situated when they are disciplined by different supervisors. *Hargrow v. Fed. Express Corp.*, 2009 WL 226039, at *1 (9th Cir. Jan. 30, 2009). Gillo failed to specifically identify any non-Asian similarly situated employee who had been disciplined by Leslie. ECF No. 20 at 5. Based on the record, I find that Gillo did not demonstrate that similarly situated non-Asian employees were treated more favorably than he was. As such, he cannot establish a prima facie case of racial discrimination under Title VII.

**B.  Gillo did not establish that the actions taken by the FAA were pretext.**

Even assuming, arguendo, that Gillo can establish a prima facie case of racial discrimination, he has not established that the actions taken by the FAA were pretext. After a plaintiff satisfies their initial burden in a Title VII racial discrimination claim, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the actions taken. *McDonnell Douglas*, 411 U.S. at 803. If the employer proffers legitimate nondiscriminatory reasons for the actions taken, the plaintiff then can demonstrate that the reasons given were merely pretext for discrimination. *Id.* at 804.

7

DOT demonstrated legitimate non-discriminatory reasons for the decision to suspend Gillo—namely Gillo's repeated improper use of the government travel card. ECF No. 42 at 15. The FAA policies clearly prohibit employees from using the travel card for personal use or for transactions unrelated to official travel. ECF No. 42-6 at 5. During the time frame at issue, the FAA alleged that Gillo used his government travel card for personal expenses 284 times. ECF No. 42 at 13. Gillo does not dispute this. ECF No. 43 at 7. At no point during this time was Gillo on official government travel. *Id.* Gillo participated in a "Travel Charge Card: Cardholder" training (ECF No. 42-5 at 8), was aware of the FAA's policies, and admitted in his complaint that he was using his FAA credit card in a way that violated the FAA's rules. ECF No. 20 at 3. Gillo also admitted that he should have stopped using the FAA card when he moved to Las Vegas. ECF No. 42-5 at 3. DOT has clearly met their burden in proffering legitimate non-discriminatory reasons to suspend Gillo. As such, the burden shifts back to the plaintiff to demonstrate pretext.

At the pretext stage the Ninth Circuit recognizes that "very little evidence is necessary to raise a genuine issue of fact regarding an employer's motive." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004). However, a plaintiff still must present some evidence that illuminates the defendant's motivation—either by providing direct evidence that the action was discriminatory or circumstantial evidence that contests the defendant's claimed motivation. *Kama v. Mayorkas*, 107 F.4th 1054, 1059 (9th Cir. 2024). To show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives. *Vasquez*, 349 F.3d at 642.

First, Gillo fails to present direct evidence that Leslie's actions were racially discriminatory. ECF No. 20 at 6. Gillo conceded in his complaint and at the hearing that he has not presented any evidence demonstrating that Leslie exhibited any racial animus toward him

nor toward Asians in general.[5] *Id.* Additionally, Gillo admitted in his deposition that he had never heard Leslie make any racially derogatory comment to him or about him. Gillo Dep., Def.'s Ex. C, ECF No. 42-10 at 9.

      Second, Gillo fails to present substantial evidence challenging the credibility of Leslie's reason for suspending Gillo for 30 days—the unauthorized credit card uses. To support his position that Leslie's decision to suspend Gillo was not because of his unauthorized credit card use, but was instead because of racial animus, Gillo argues that (1) he was authorized to use the card by a previous supervisor and (2) both the process surrounding Leslie's decision to issue Gillo a thirty-day suspension and the suspension itself deviated from the FAA's established policy. ECF No. 43 at 19, I will address each argument in turn.

      Gillo first claims he was authorized to use the card by a previous supervisor. ECF. No. 20 at 3. However, it is not clear from the record what supervisor Gillo is talking about. *Compare* ECF No. 44-1 (declaration of Gillo's Los Angeles Operations Supervisor stating that Dale Westall, Air Traffic Manager Los Angeles ARTCC permitted Gillo to use his FAA credit card), *with* ECF No. 42-5 at 3 (excerpt from DOT Report of Investigation where Gillo said that Los Angeles Air Traffic Manager Gregory Haywood gave him permission to use the FAA card for personal purposes). Even after the hearing, it is still not clear exactly who supposedly gave Gillo the authorization to use the card. Additionally, although Gillo claims he was authorized to use the travel card for travel-related items like food and gas, he admitted during the FAA investigation that he used the credit card for dry cleaning, airport parking, car rental, and car washes. ECF No. 42-5 at 29–30. Further, Gillo's argument that he was authorized to use his card by his previous supervisor is largely weakened by his own admission in the FAA's Office of Security investigative report that he should have stopped using the FAA card when he moved to Las Vegas. ECF No. 42-5 at 3, 30. These inconsistent responses, coupled with his admissions of

---

[5] At oral argument, the court gave Gillo multiple opportunities to point to record evidence of any sort of racial animus. Ultimately, he conceded there was none.

misuse, do not support a finding that Gillo's alleged permission to use the card amounted to *substantial* evidence of pretext. *Noyes*, 488 F.3d at 1170. Even if he was given limited permission to use the card, by his own admission he exceeded that authority.

Second, Gillo argues that Leslie acted out of racial animus when disciplining him because Leslie improperly removed Gillo's first-line supervisor, Wadley, from his disciplinary review and penalty process, and Leslie's thirty-day suspension departed from the FAA's published progressive discipline "table of penalties." ECF No. 20 at 4–5. Evidence that an employer deviated from established policy can be deemed pretext. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1117 (9th Cir. 2011). However, the Ninth Circuit recognizes that this is a fact-specific inquiry and does not automatically establish a genuine issue of material fact. *Diaz v. Eagle Produce Ltd. P'ship.*, 521 F.3d 1201, 1214 (9th Cir. 2008). Despite not involving Wadley in the investigation, Leslie states that he took steps to ensure that other offices and supervisors were involved in the process. Def.'s Ex. A, Leslie Decl., ECF No. 42-2 at 6. Specifically, prior to issuing discipline, Leslie had the FAA's Office of Security investigate the credit card use and consulted with the following personnel: Carmen Hatchett, District Executive Advisor; Devon Bradford and Angela O'Neal, Executive Technical Representatives; Richard Silva, Assistant General Manager for Los Angeles District; and Shawna Richard, Employee Labor Relations Specialist. *Id.* Additionally, and perhaps the most importantly, despite being asked multiple times during the hearing, Gillo could not point to any evidence in the record demonstrating that removing Wadley from the investigation was carried out due to racial discrimination. *See Phipps v. Gary Drilling Co.*, 722 F. Supp. 615, 619 (E.D. Cal. 1989) (finding that mere assertions of discriminatory motive and intent are inadequate. [. . .] In other words, the evidence must be sufficient to identify actions which, if unexplained, give rise to an inference of discriminatory conduct.) (citations and quotations omitted); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (more than a "metaphysical doubt" is required to establish a genuine dispute of material fact); *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position" is

insufficient to survive summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the plaintiff."). Further, DOT alleges that Leslie's departure from the progressive penalties occurred not because of racial animus but because Leslie viewed Gillo's continued misuse of the travel card as multiple offenses. ECF No. 42-2 at 4–5. Gillo does not provide any evidence identifying any individuals who violated the FAA's rules multiple times and were treated more favorably by Leslie to demonstrate that this departure was pretext. ECF No. 20 at 5; ECF No. 42-9 at 3; *Vasquez*, 349 F.3d at 641–42.

In sum, Gillo has not provided substantial evidence establishing that the decision to suspend Gillo for thirty days was pretext for racial discrimination. It is not likely that a reasonable trier of fact could find that Leslie's decision to suspend Gillo for his credit card usage was a pretext for racial discrimination.

### C. Gillo cannot demonstrate that Leslie's decision not to hire him was pretext for retaliation.

I find that Gillo has not established the required "but for" causal connection necessary to prove a retaliation claim, nor does he demonstrate that the legitimate non-discriminatory reasons for not hiring him for the positions were pretext for retaliation. As such, DOT is granted summary judgment on this claim.

To establish a prima facie case of retaliation in violation of Title VII, a plaintiff must demonstrate that (1) they engaged in protected activity, (2) they were thereafter subjected to an adverse employment action, and (3) there is a causal link between these two events. *Vasquez*, 349 F.3d at 646. Gillo alleges that Leslie retaliated against him when Gillo applied for and did not get hired for FAA support specialist, supervisory traffic management coordinator, and support manager positions. DOT does not dispute that the prima facie case of retaliation has been met. ECF No. 42 at 16. Gillo was engaged in protected activity by filing the EEO complaint, he suffered an adverse employment action when he was not hired for the three positions he applied

for, and the denials of the job opportunities happened a few months after he engaged with the EEO process. *Id.*

However, to prove that Gillo was retaliated against, he must demonstrate that "but for" his protected activity, Leslie would have selected Gillo for one of the three positions. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360–62 (2013). Gillo has not satisfied this burden. DOT offered several legitimate non-discriminatory reasons explaining that the choice to not hire Gillo for the three positions had nothing to do with the fact that Gillo filed the EEO complaint. ECF No. 42 at 16–18. Gillo did not have prior experience as a support manager or support specialist. ECF No. 42 at 16, 17; Leslie Decl., Def.'s Ex. A, ECF No. 42-2 at 8, 10. For the support specialist position, a two-member panel concluded that Bucholz's prior experience as an operations manager, support manager, and support specialist made him better suited for the position. Leslie Decl., Def.'s Ex. A, ECF No. 42-2 at 7–8. For the support manager position, Leslie hired Arnett because a two-member panel ranked him first, and because of his experience as an air traffic manager, operations supervisor, and support specialist. Leslie Decl., Def.'s Ex. A, ECF No. 42-2 at 9. For the supervisory traffic management coordinator position, which was a management position for which Leslie had hiring authority, Leslie states that he hired Hollie because of his years of working at TRACON and because Gillo's violations of the travel card policy caused Leslie to lose confidence in him for management-level vacancies. Leslie Decl., Def.'s Ex. D-2, ECF No. 42-12 at 9.

Gillo has not demonstrated that the FAA's stated reasons for not hiring him were pretext. To support his argument that he was retaliated against, Gillo provides a self-serving statement that he was "better qualified than the three men selected." Gillo Decl., Pl.'s Ex. 4, ECF No. 44-4 at ¶ 44. The only other evidence that Gillo provides is a statement by his supervisor, Wadley, that Gillo was more experienced than Hollie, who was selected for the supervisory traffic management coordinator position. Wadley Aff., Pl.'s Ex. 5, ECF No. 44-5 at 2; Wadley Dep., Pl.'s Ex. 6, ECF No. 44-6 at 28:9–13. The rest of Wadley's statement that Gillo failed to

address in his own statement is that he was medically disqualified for the position that was ultimately awarded to Hollie. Wadley Dep., Pl.'s Ex. 6, ECF No. 44-6 at 27:17–20. Wadley also stated that it was unclear if Gillo would ever receive his qualification back. *Id.* There is no evidence on the record to suggest Gillo did, in fact, receive the qualification back. And Gillo provides no evidence, aside from his self-serving statement, that demonstrates that he was better qualified for the other two positions. *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) ("an employee's subjective personal judgments of . . . competence alone do not raise a genuine issue of material fact").

In conclusion, Gillo has provided no specific or substantial evidence that establishes pretext. No reasonable trier of fact would find that the FAA's decision not to hire Gillo for the three positions was pretext for retaliation.

### III.    Conclusion

IT IS THEREFORE ORDERED that defendant's motion for summary judgment **[ECF No. 42] is GRANTED.**

The Clerk of Court is kindly directed to enter judgment in favor of the Department of Transportation and to close this case.

Dated: September 27, 2024

_____
Cristina D. Silva
United States District Judge